UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Dempsey C. Wood,** | ) | **CASE NO. 1:04 CV 1633** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Mid-America Management Corp.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Docs. 16, 17). In this case, plaintiff seeks overtime wages allegedly not paid to him while employed by defendant. For the following reasons, the Motion is granted.

### Facts

Plaintiff, Dempsey C. Wood, brought this lawsuit against defendant, Mid-America Management Corp., his former employer. Plaintiff was employed by defendant from 1999 through May 2003. Plaintiff was an hourly employee. (pltf. aff.)

With the exception of a couple references to the affidavit of Kathleen Hendricks, the

1

following facts are taken exclusively from plaintiff's deposition testimony and exhibits authenticated therein. Defendant manages commercial and residential properties nationwide, including the Imperial House Apartments, located on Edgewater Drive in Lakewood, Ohio. (Kathleen Hendricks aff.) Plaintiff began his employment with defendant at the Imperial House as an on-site maintenance technician in 1999. (pltf. depo. 35-36). As part of plaintiff's compensation, he received an on-site apartment at the Imperial House free of charge. (*Id.* 60-61). Plaintiff signed an Employee Suite Agreement in October 1999 which states that defendant provided the suite as a condition of plaintiff's employment and that plaintiff was "not a 'resident' within the meaning of the Ohio Landlord-Tenant Act, but ... an employee who is partly compensated for his employment through possession of an apartment suite." (Doc. 19 Ex. 1).

During his employment plaintiff worked with maintenance supervisor John Leeds who, in addition to the property manager, gave plaintiff his daily work assignments. (pltf. depo. 80-81). When plaintiff began his employment, Leigh DeVault was the property manager. DeVault was replaced by Kathleen Hendricks in November 2000. (*Id.* 36, 80; Hendricks aff. ¶ 1). The property manager reported to Joe Taylor, the director of residential properties. (pltf. depo. 81).

During plaintiff's initial interview, DeVault and Taylor informed plaintiff that the position would require overtime for which he would be compensated. Plaintiff's duties, generally performed during his 8:00 a.m. to 4:00 p.m. shift, included daily preventative maintenance of the building's boilers and HVAC system, as well as seasonal responsibilities regarding the pool and snow removal. He performed garbage removal as well as responding to

mechanical or plumbing problems reported by residents. Plaintiff restored rental units to their original condition so that they could be rented again after a suite tenant vacated. (pltf. depo. 37, 39, 41-44, 221).

Plaintiff's position required him to be "on call" every other week to respond to after-hours emergencies. Generally, tenants' maintenance requests during these hours were satisfied the next business day. Plaintiff alternated the on call weeks with John Leeds. Plaintiff was paid for two hours of overtime pay for the week he was on call, whether or not he was required to perform any work. He was also eligible for additional overtime compensation if he was required to perform work while on call. (*Id.* 117-119, 141-142, 177-178).

Plaintiff completed and signed his own bi-weekly time cards, sometimes accompanied by his handwritten notes. Plaintiff turned in the time cards to the property manager for processing. The property manager was not on-site to monitor after-hours work and plaintiff knew that defendant relied on his completed time cards to accurately compensate him. (*Id.* 220, 153-154, 160; Doc. 17 Ex. 6).

Whether plaintiff was on call or not, he performed after-hours tasks and claimed overtime hours on his time cards. Plaintiff was always compensated for the overtime hours he reported on his time cards. Plaintiff, however, did not report all of his overtime hours. For instance, if a resident knocked on plaintiff's door rather than calling the answering service (thereby leaving a record of the request) and asked plaintiff's assistance, he did not always record his overtime, although sometimes he did. Additionally, plaintiff did not always record his overtime because "there is so many little things in between there

that are so numerous, I couldn't go back through the end of the night.  I was with this person two minutes, that person five minutes.  I went and talked to this person for an hour.  Just too many numerous things in between there."  Plaintiff "figures" that he worked an "average of five hours plus a day, per day" in overtime for which he was not paid over the course of the three and one-half period of time during which he was employed by defendant. (pltf. depo. 32-37, 74-75, 136, 140-145, 178-179; Ex. 6). Plaintiff, however, did report all overtime hours for which he responded through defendant's answering service. (*Id.* 71, 108, 135, 172-173, 179, 201).

Plaintiff had a meeting with Kathy Hendricks on October 30, 2002 wherein he informed her that he worked more overtime hours than he reported.  Additionally, plaintiff testified that "maybe somewhere along the line... I think I did say there is time that I never turned in."  Plaintiff thought this conversation occurred prior to the October 2002 meeting.  However, plaintiff acknowledged that Hendricks always told him to report his overtime.  Hendricks prepared a memorandum of the October 2002 meeting which states in part,

> [Plaintiff] said that he did a lot of overtime that he didn't turn in because he thought he would be getting the larger apartment.  There was over time that [plaintiff] did do but he asked if he could take the time off instead of getting paid the overtime which he did. ... I asked him when he was going to pay for the calls he made and he told me that he would pay when I paid him for the overtime that he put in.  I told him that he was paid for all of the overtime that he claimed.  On several occasions I told him to make sure that he turned in the proper amount of overtime if for example he did trash on the weekends.

(pltf. depo. 74, 76-78; Doc. 19 Ex. 3).  John Leeds also told plaintiff to report all overtime hours in order to be compensated.  (*Id.* 99-100).

Plaintiff's employment with defendant terminated in May 2003.  In August 2004,

4

plaintiff filed this lawsuit. Plaintiff's First Amended Complaint asserts four claims all arising out of plaintiff's contention that he regularly worked overtime but was not paid overtime wages. Count One alleges a violation of the Ohio Minimum Fair Wage Standard Law. Count Two alleges a violation of the Fair Labor Standards Act (FLSA). Count Three alleges a willful violation of the FLSA. Count Four requests compensation pursuant to Ohio Revised Code § 4113.15.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to

the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

The FLSA provides that employees may not be required to work more than forty

hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay. *Elwell v. University Hospitals Home Care Services,* 276 F.3d 832, 837 (6th Cir. 2002) (citing 29 U.S.C. § 207(a)(1) ). *See also Bowers v. NOL, LLC*, 114 Fed.Appx. 739, 740, (6th Cir. 2004) ("The FLSA requires employers to pay employees at a rate of 150% of their normal pay for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1).")

Ohio's Minimum Fair Wage Standards Act, Ohio Revised Code 4111.03(A), also provides that, "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and, section 13 of the [FLSA]..." *Wade-Hairston v. Franklin County Bd. of Mental Retardation and Developmental Disabilities,* 1998 WL 890256, *3 (Ohio App. 10th Dist. Dec. 17, 1998).

Where an employee seeks to recover unpaid overtime compensation under the FLSA, he must first "prove by a preponderance of the evidence that (1) there exists an employer-employee relationship; (2) there was an engagement in activities within coverage of the FLSA; and (3) the defendant failed to pay the plaintiff the overtime pay required by law. Once the plaintiff has made a prima facie case, the burden shifts to the employer to show by a preponderance of the evidence that one of the exemptions afforded by Section 213 of the FLSA applies to the employment in question." *Kowalski v. Kowalski Heat Treating, Co.*, 920 F.Supp. 799, 806 (N.D. Ohio 1996) (citing 29 U.S.C. § 201 *et seq*.).  The Sixth Circuit has recognized that

> an FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he [or she] was not properly compensated. Often, the plaintiff can prove his or her 'under-compensation' damages through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate.

*Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) ).

Defendant does not dispute that plaintiff is a non-exempt employee, but asserts that plaintiff has presented no evidence to establish that he worked additional overtime hours or that defendant knew of the alleged overtime hours. Plaintiff asserts that he worked many hours of overtime with defendant's knowledge and was uncompensated for it. For the following reasons, plaintiff's assertion is unconvincing.

Defendant submits time cards which plaintiff turned in to defendant from 2001 through 2003 recording weekly hours worked, including "on call" and overtime. Plaintiff's additional handwritten notes enumerating overtime hours for specific tasks are appended to the time cards. (Doc. 17 Ex. 6). Plaintiff testifies that he was paid for all overtime hours he reported. (pltf. depo. 166-167, 190).

Plaintiff asserts that he "worked significant overtime hours each week for which he was not compensated." (Doc. 19 at 14). Plaintiff points to the following tasks he says that he performed without compensation:

- Plaintiff avers that he patrolled and secured the grounds for about one-half hour every night. Plaintiff asserts that while Hendricks denied that plaintiff was required to patrol and lock up every evening, issues of fact exist because a memorandum prepared by defendant evaluating John Leeds shows that Hendricks knew that plaintiff was patrolling and locking up in the evening.

8

- Plaintiff avers that he "worked past" his regular hours for "move-ins and move-outs" on numerous occasions, and that preparing an apartment for a new tenant could take up to one week to complete.

- Plaintiff avers that he was responsible for maintaining the pool which, during pool season, "seemed like a full-time job." The cleaning usually occurred during his working hours, but required duties demanded overtime hours on weekends and nightly lock-up which also included cleaning. Plaintiff also worked "security" around the pool, removing unlawful visitors. Plaintiff states that he worked a minimum of 13 hours per week on this maintenance. Additionally, plaintiff points out that state and local law require that records be kept of pool testing and that plaintiff documented each time he checked the water quality three to four times daily.

- Plaintiff avers that he was required to check the boilers everyday for at least 15 minutes in the morning and in the evening and that he was required by law to record each time he checked the boiler.

- Plaintiff states that he was never paid for emergency calls and submits records of after-hours telephone messages left with defendant's answering service.

- Plaintiff avers that he escorted prospective tenants around the grounds after hours.

- Plaintiff avers that he "regularly emptied trash" and removed snow after hours.

Plaintiff asserts that as to each of these tasks, a jury trial is necessary to determine the amount of hours spent for which plaintiff was uncompensated.

Notwithstanding, as stated above, plaintiff testified at deposition to the following. He was responsible for completing his time cards, accounting for the hours he worked, including overtime hours and on call compensation. He was informed that the position would require overtime and that he should report those hours. He knew defendant relied on the accuracy of the time cards to compensate him. Plaintiff was always compensated

9

for the overtime hours he reported on his time cards.[1]

Plaintiff now asserts that he did not always record overtime hours worked. He asserts that defendant had actual or constructive knowledge of those hours because they involved tasks that were required to be completed and, in some instances, were even separately documented by plaintiff (i.e., the testing of the pool and boiler). Nonetheless, plaintiff failed to record or report these alleged overtime hours on his time cards. Additionally, plaintiff acknowledged at deposition that the pool maintenance duties and emptying the garbage were tasks that were not required to be done after hours and were performed during the normal workday. (pltf. depo. 221). Furthermore, plaintiff admits that he reported all tasks performed as a result of responding to the answering service, while not always recording his time when a tenant asked him directly for assistance.

Defendant also points out that plaintiff's affidavit conflicts with his prior deposition testimony. This Court agrees. "When a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony." *Lanier v. Bryant* 332 F.3d 999, 1004 (6th Cir. 2003) (citations omitted). *See also Lockard v. General Motors Corp.*, 52 Fed.Appx. 782, 789 (6th Cir. 2002) ("[A] party may not create a genuine issue of material fact to defeat summary judgment by filing an affidavit that conflicts with prior deposition testimony.")

---

[1] Despite the fact that plaintiff testified that he was compensated for all overtime hours reported on his time cards, he now argues that defendant refused to compensate plaintiff for overtime hours submitted on his June 8, 2002 time card because the time card shows that certain hours are "crossed out." (Doc. 19 Ex. 14). However, without supporting evidence, the Court is not in a position to make any conjecture as to who crossed items out or why this was done.

10

Plaintiff avers:

25.  I never received overtime pay for my overtime work because I was told these were part of my regular duties.

26.  I was told when I was hired that I would work a lot of overtime hours, but without compensation.  They were part of my regular duties.  I did not know the law about overtime pay and did not think it was wrong at the time.

27.  These were part of my regular duties.

28.  The only things I claimed for overtime were the hours I was allowed to claim.

29.  Sometimes I turned in overtime that was rejected, because it was not approved.

(pltf. aff.).  However, plaintiff previously testified at deposition that upon his hire he was told that the position required overtime for which he would be compensated, and that Hendricks always told him to report his overtime.  (pltf. depo. 37, 74).  Despite averring ignorance as to overtime pay, plaintiff testified that at previous jobs he worked overtime for which he was compensated.  (*Id.* 27-29).  He further testified that whether or not he was on call, he performed after-hours tasks, claimed overtime hours on his time cards and was always compensated for the overtime hours he reported.  (pltf. depo. 74-75, 140-145).  For example, plaintiff testified in particular:

Q.  Did Kathy [Hendricks] ever tell you not to write down certain hours?   Did she ever say no, you're not going to get paid for that, don't write it down?

A.  No, if I was expected to do it, in the end she is saying it was expected for me to turn in the overtime.

Q.  And the overtime work you did she never gave you a hard time for paying you for it?  Kathy always said to you, if you work- -

A.  They would approve the overtime as it came in.  I would put the date and time on the back of the timecard.  At the end of the week she would go over it and check

11

the overtime and either approve or disapprove.

Q.  Did she ever disapprove any hours?

A.  No, nothing that I did I was on call for.

(pltf. depo. 74-75).   Nor does plaintiff dispute that he was automatically paid two overtime hours for each week he was on call.  (*Id.* 119).

Based on the foregoing, plaintiff has failed to carry his burden of proof that he performed work for which he was not properly compensated.  *Myers, Anderson, Kowalski, supra.*

Even assuming that the time records are inaccurate and that plaintiff can establish by a reasonable inference that he worked additional overtime hours so that the burden shifts to defendant, summary judgment is nonetheless appropriate.  Plaintiff acknowledges that where accurate records do not exist, he must provide a reasonable estimate of overtime hours.  Indeed, in *Myers, supra,* the Supreme Court stated that where the employer's records are inaccurate or inadequate, the employee

> has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate..

*Myers,* 328 U.S. 687-688.

As stated earlier, plaintiff estimates that he worked about five hours of overtime per day, every day.  Kathy Hendricks avers that after plaintiff was discharged, he was

12

replaced by Jason West, an on-site maintenance technician at the Imperial House. West has been in the position for almost two years and has performed the same duties as plaintiff did. The requirements of the position have not changed since plaintiff held the position. (Hendricks aff. ¶ 4). West avers that he reports all of the overtime hours he works on the time cards which he completes. From January 2004 through April 2005, he has worked a total of 219 overtime hours, exclusive of the two hour automatic on call pay. (West aff. ¶¶ 3, 4). This amounts to about three hours of overtime *per week*. Clearly, this is far less than five hours per day (or 35 hours per week) that plaintiff estimates. Because defendant has come forward with evidence to negate the reasonableness of the amount of plaintiff's overtime claims, summary judgment is appropriate.

Plaintiff makes two additional assertions which are unavailing.

First, plaintiff argues that "defendant illegally used comp time in lieu of overtime payments." (Doc. 19 at 2). Plaintiff asserts that on some occasions, defendant gave plaintiff compensatory time off instead of paying him one and one-half times his regular rate of pay. Plaintiff points to Kathy Hendricks's October 30, 2002 memorandum evaluating plaintiff wherein she states, "There was overtime that Dempsey did do but he asked if he could take the time off instead of getting paid the overtime which he did." (Doc. 19 Ex. 3). Plaintiff argues that such compensation is illegal except in narrow circumstances and that, in any event, defendant failed to maintain records and, therefore, plaintiff's reasonable estimates of hours worked are presumed accurate.

However, as defendant points out, plaintiff failed to plead such a claim for unlawful compensatory time in lieu of overtime payment. Regardless, the assertion fails

13

on its merits. Plaintiff does not dispute that he may legally trade working hours for time off during the same work week that he performed overtime labor. (Doc. 19 at 3). Plaintiff points to his affidavit wherein he avers:

> 4. Sometimes when I worked overtime, rather than receiving overtime pay, I was given time off either the next week or some following week. If I worked 8 hours of overtime, I was given 8 hours off. Sometimes I took the time off in the same week I worked the overtime, but mostly the time off occurred the next week or some following week.

(pltf. aff.). This conclusory averment clearly contradicts prior deposition testimony. Plaintiff testified,

> Q. So during this discussion with Kathy, or I guess in any other discussion with Kathy, when I say this discussion, this October 30, 2002 discussion, or at any other time, did you and Kathy ever discuss if you worked extra hours during the week you would trade time off for time off that same week.
>
> A. That week.

(pltf. depo. 72).

> A. Yes. I did that numerous amounts of time, I would save my overtime to take days off.
>
> Q. During the same week?
>
> A. Sure.

(*Id.* 183-184).

> Q. You would trade it, eight overtime hours for a day off?
>
> A. I got eight hours over for a week instead of taking that in pay can I just have the day off.

(*Id.* 189-190).

Therefore, plaintiff clearly testified that the compensatory time was received in the

14

same week that he performed overtime labor and he has not demonstrated that defendant illegally used compensatory time in lieu of overtime payments.

Second, plaintiff argues that because his on-site apartment was part of his compensation, his regular rate of pay was actually much higher as it should have included the value of this apartment. Therefore, the 235.5 overtime hours for which plaintiff was compensated were improperly calculated as being based on an inaccurate regular rate of pay. Again, plaintiff's First Amended Complaint fails to include such an allegation as to improper calculation for paid overtime but rather seeks compensation for unpaid overtime wages.[2]

Assuming plaintiff did allege such, the assertion is unpersuasive. Plaintiff contends that under the FLSA, an employee's regular rate of pay includes all remuneration paid to the employee. However, defendant points out that courts have recognized that 29 U.S.C. § 203(m) permits an employer to setoff the cost of housing provided against wages owed:

> The meaning and intent of this statutory language is clear: Congress explicitly authorized a wage paid by an employer to an employee to include the reasonable cost of lodging, board, and other facilities which confer similar benefits on employees, and which are customarily furnished by the employer to his employees. Thus, Congress recognized that housing facilities, like meals, are essential for human existence and are ordinarily paid for from an employee's earnings. An employee has to reside somewhere, and therefore rental payments for the employee are usual and customary items of his or her living expenses. If an employer absorbs this expense for an employee, it is only equitable and reasonable

---

[2] Plaintiff asserts that he was provided an apartment, valued at $900.00 per month, as part of his regular rate of pay. (First Am. Compl.¶ 9). He asserts elsewhere, "Plaintiff was not compensated for the overtime hours he worked each workweek at a rate of one and-half times his regular rate of pay." (*Id.* ¶ 18). However, he does not allege that his overtime compensation was improperly calculated.

15

that the employee "reimburse" the employer from wages earned.

*Soler v. G. & U., Inc.*, 833 F.2d 1104, 1108 (2nd Cir. 1987) and *Lopez v. Rodriguez*, 668 F.2d 1376, 1381 (D.C. Cir. 1981) ("Given [the] voluntary acceptance of a position as a 'live-in' domestic service employee, in which board and lodging were understood to be part of her compensation, it was erroneous for the District Court to deny [the employer] a credit for board and lodging furnished ...")

For these reasons, plaintiff's assertion that his overtime pay was improperly calculated is without merit.[3]

For the foregoing reasons, summary judgment is warranted on all claims.

IT IS SO ORDERED.

       /s/ Patricia A. Gaughan
      PATRICIA A. GAUGHAN
      UNITED STATES DISTRICT JUDGE

Dated: 7/18/05

---

[3] In the same vein, it is unlikely that plaintiff declared as federal taxable income the $900.00 value of his apartment in addition to his wages earned.